Alice E. McKNIGHT and Charles L.
McKnight, Appellants,

v.

RICE, HOPPNER, BROWN &
BRUNNER, Appellee.

RICE, HOPPNER, BROWN &
BRUNNER, Cross-Appellant,

v.

Alice E. McKNIGHT and Charles L.
McKnight, Cross-Appellees.

Nos. 7509, 7537.

Supreme Court of Alaska.

March 16, 1984.

Paul A. Barrett, Call, DeWitt, Barrett & Burbank, Fairbanks, for appellants/cross-appellees.

Roger Brunner, Rice, Hoppner, Brown & Brunner, Fairbanks, for appellee/cross-appellant.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and MOORE, JJ.

MATTHEWS, Justice.

This appeal concerns the priority of claims to fire insurance proceeds recovered by Richard and Adriana Van Hatten for the destruction of their house. Appellee, Rice, Hoppner, Brown & Brunner (hereafter Rice), represented the Van Hattens in litigation to obtain the insurance proceeds, and also in arson and perjury criminal charges against them. Rice claims the insurance proceeds through an attorney's lien and assignments from the Van Hattens. Appellant, Alice McKnight, was injured in an automobile accident with Richard Van Hatten. She and her husband obtained a court ordered assignment from him. They concede Rice's right to its fees earned in the insurance case, but assert that their assignment has priority over Rice's fees in the criminal cases. The trial court granted summary judgment to Rice, ruling that its claims to the insurance proceeds were entitled to priority. We reverse.

## I. FACTS AND PROCEEDINGS

On January 19, 1976 a fire destroyed Richard and Adriana Van Hatten's house. Soon after, the Van Hattens retained Rice to represent them in collecting the fire insurance proceeds.

An investigation for arson was conducted by the Alaska State Troopers and the insurance company. On June 26, 1979 the insurance company filed a complaint for declaratory judgment in federal court alleging the fire had been set by the Van Hattens. The Van Hattens counterclaimed for the proceeds. Rice and the Van Hattens allege that by this time they had a specific oral agreement that Rice would represent the Van Hattens in the civil action to collect the insurance proceeds and any criminal charges that might be filed; and that Rice's attorney's fees incurred in both cases were to be secured by any insurance proceeds which might be recovered.

Alice McKnight was injured in an automobile collision with Richard Van Hatten on January 31, 1980. Ms. McKnight and her husband Charles filed suit against Van Hatten and on December 12, 1980 a judgment on confession was entered against Van Hatten in the amount of $20,023.01.

On March 2, 1981 a judgment debtor examination of Van Hatten was conducted in the McKnights' case. Van Hatten testified that he had a pending insurance claim for fire loss and that Rice was representing him in that case. Later that same day,

counsel for the McKnights telephoned Julian Rice of Rice, Hoppner, Brown & Brunner concerning the insurance claim. Mr. Rice confirmed that he was representing Van Hatten on the insurance claim and gave the McKnights' attorney the docket number of that case.

On March 5, 1981 the McKnights filed a motion for an order directing the application of anticipated proceeds from the Van Hattens' insurance claim to the McKnights. The motion was granted on March 26, 1981. Judge Taylor ordered Van Hatten to:

[E]xecute and deliver to [the McKnights] an assignment (up to the amount of [the McKnights'] judgment) of any recovery he may obtain by virtue of his Federal Court insurance claim litigation.

The McKnights' counsel alleges that five days later, on March 31, 1981, he spoke again with Mr. Rice and at that time advised him of the court order regarding assignment of the insurance claim proceeds. Also on March 31, 1981, the McKnights' attorney wrote to Irwin Ravin (Van Hatten's attorney in the McKnights' case), forwarding an assignment form for Van Hatten to execute and return. The assignment form, captioned as a pleading in the federal civil litigation, stated:

Defendant Richard Van Hatten hereby assigns to Alice E. McKnight and Charles L. McKnight his share (after all litigation costs and attorneys' fees) of any recovery received in or as a result of this matter ... to a maximum of $20,023.01 plus interest....

Mr. Ravin did not respond to that letter or to two later inquiries.

Counsel for the McKnights alleges that on May 8, 1981 he again discussed the status of the insurance claim litigation with Mr. Rice and informed Rice that Van Hatten was subject to a court order requiring him to assign the proceeds of that claim to the McKnights. Mr. Rice disputes the substance of the conversations between himself and the McKnights' attorney. He states that he did give information on the insurance claim litigation to the McKnights and that something about an assignment

may have been mentioned in the telephone calls. He claims, however, that the exact nature of what was going on in the automobile accident case was not known to him until a court hearing on September 1, 1981.

On June 23, 1981 the Van Hattens were indicted for first degree arson as a result of the fire and for one count of perjury each for stating under oath that they had not set the fire. Richard Van Hatten was also indicted for four unrelated counts of perjury. Rice represented the Van Hattens on these criminal charges.

Meanwhile the McKnights, having heard nothing from either Ravin or Van Hatten, filed a motion on July 9, 1981 for an order requiring Van Hatten to show cause why he should not be held in contempt for failing to execute the assignment as required by the court's March 26th order. A hearing was held on that motion on August 4, 1981 but neither Van Hatten nor Ravin appeared. The hearing was postponed until September 1, 1981. Richard Van Hatten later testified that someone at Rice's firm advised him not to sign the assignment to the McKnights until he could discuss the matter with Mr. Rice, who was not in town.

On August 31, 1981, the day before the scheduled show cause hearing, a meeting occurred between Mr. Van Hatten and Mr. Rice. At that meeting, the assignment to the McKnights was discussed. Mr. Rice states that he refused to advise Van Hatten as to whether or not Van Hatten should sign the assignment to the McKnights, and that he told Van Hatten to consult with Ravin and do what Ravin advised. In the meantime, however, Mr. Rice obtained Van Hatten's signature on a document which assigned the proceeds of the insurance litigation to Rice to the extent necessary to cover attorney's fees and costs in the civil case and the criminal cases. Mr. Rice stated:

I told Mr. Van Hatten on August 31, 1981, that he would have to assign the proceeds of the insurance claim to Rice, Hoppner, Brown & Brunner, or we would not be able to represent him further in the three criminal cases listed in the as-

signment. It was a choice of either assigning those proceeds to us or he would have to seek the assistance of the public defender.

On August 31, 1981 Rice also executed a written notice of lien pursuant to AS 34.35.-430. The notice of lien and assignment of proceeds to Rice were served on the insurance company's attorneys on that same day. These documents were filed in the insurance case in federal court at 8:15 a.m. the following morning, and the assignment was recorded in the State Recorder's Office at 8:31 a.m. on September 1, 1981.

The show cause hearing began at 8:30 a.m. on September 1, 1981. Mr. Rice appeared and informed the court of Van Hatten's assignment to him.[1] Van Hatten then signed the assignment to the McKnights pursuant to the court's instructions.

The trial of Richard Van Hatten on the four counts of perjury unrelated to the arson charge took place in October, 1981 and resulted in a judgment of acquittal on all counts. The trial of Richard and Adriana Van Hatten for arson and perjury for their sworn statements relating to the origin of the fire took place in early December, 1981, and also resulted in a judgment of acquittal. As a result of the outcome of these cases, a settlement of the insurance litigation was reached for $55,000.00, half payable to Adriana Van Hatten and half payable to Richard. The two settlement checks were delivered to Rice, which subsequently brought this action to determine who is entitled to the disputed funds.

Before trial, both parties to the present case moved for summary judgment. Judge Van Hoomissen found in favor of Rice, ruling that Rice should prevail on the basis of (1) its attorney's lien, (2) the August 31, 1981 written assignment by Richard Van Hatten to Rice, (3) the Van Hattens' earlier oral assignment, and (4) the terms of the September 1, 1981 assignment to the McKnights. The McKnights appeal. The trial court subsequently granted Rice attorney fees totaling $150.00. Rice cross-appeals on this issue alleging that the fees awarded were inadequate.

---

1. Mr. Rice stated:

This matter came to my attention, as far as the fire is concerned and the claim, shortly after the fire Mr. Van Hatten came to me; and I undertook to represent him; and have been representing him for, I don't know, about three years I guess it is, and his wife; and have been defending the declaratory judgment action, which has been delayed because of an extreme delay in the prosecution of the arson case. We couldn't get any records. After two and a half years, the arson case was started. And motions are pending on that, and it's set for trial, and it's coming along. At the time that it appeared as though there were going to be some difficulties in connection with this declaratory judgment case, and we became suspicious that the State was perhaps thinking of filing arson charges; it became apparent that he was going to have rather large attorney's fees. And at the time that we first undertook the case, we had agreed to take it on the basis of time and expense. It became apparent that that wasn't going to work. And we subsequently changed that to a one-third contingent basis.

The criminal cases came along. And it was agreed, but not perpetuated at that time,—it wasn't agreed immediately, there was some discussion because Mrs. Van Hatten, former wife of Mr. Van Hatten, was involved—it was agreed finally that there would be an assignment to our firm of the proceeds of the civil case in the event that it was successfully prosecuted, in order to cover the costs of representing Mr. Van Hatten in the civil case and in the multiplicitous criminal cases that have been filed by this attorney's office.

That's about the size of it. This had never been perfected until such time as I found that this proceeding was coming about; and I was finally able to get Mr. Van Hatten and his wife to sign the necessary instrument. And I filed—and, of course, I had my own signature on a notice of lien. And I filed the notice of lien, attorney's lien, in the federal district court case. An assignment of proceeds has also been filed in that case. And that's about the size of it.

I wanted to make this statement because I was unaware of what was going on here until such time as—well, the complete facts didn't become known to me until I sat here and listened to what went on today. I believe that there had been a contact from Mr. Barrett a time or two asking—I believe he was inquiring as to whether or not there were going to be any proceeds from that litigation. And I believe that something was said by him at that time concerning assignment. I don't remember for sure, he may have mentioned something like that to me. But the exact nature of what had been going on in this matter was not known to me until now.

## II. PRIORITY OF CLAIMS

### A. The Written Assignment

Rice asserts that it is entitled to the insurance proceeds, even if it had notice of the court order to assign, because the written assignment given to it by Richard Van Hatten was prior in time to the assignment received by the McKnights. We reject this proposition because of the strong public policy in favor of the enforcement of court orders.

Once a party is ordered by a court to assign a claim, that party has a duty to comply with the order forthwith. If the party ignores the order and assigns the claim to a third person, his act would be both wrongful and contemptuous.[2] Further, we conclude that such an assignment would be void as against public policy if the assignee had knowledge of the court order and thus knew that the assignment was wrongful.

Section 317(2)(b) of the Restatement (Second) of Contracts (1981) provides:

A contractual right can be assigned unless ... the assignment is ... inoperative on grounds of public policy....

*See also Federal Deposit Insurance Corp. v. Barness*, 484 F.Supp. 1134, 1151–53 (E.D.Pa.1980). To determine whether an agreement[3] is inoperative on grounds of public policy requires that a balance be struck between the public policy interest against enforcement and interests favoring enforcement. *See* Restatement (Second) of Contracts § 178 (1981);[4] *See also California Pacific Bank v. Small Business Administration*, 557 F.2d 218, 224 (9th Cir. 1977); *Begelfer v. Najarian*, 381 Mass. 177, 409 N.E.2d 167, 175 (1980). The balance would be rather easily struck against enforcement of the assignment in the example which we have given for there is a strong public policy that court orders be obeyed, and it is difficult to give much weight to the position of an assignee who has taken an assignment knowing that it has been given in defiance of a court order.

In the present case, the McKnights produced evidence that Mr. Rice knew of the court order when he received the written assignment from Van Hatten. The McKnights' counsel stated that he had informed Mr. Rice on two occasions of the court order. Mr. Rice's testimony is unclear as to when he received notice of the court order. This is an issue of material fact. Since Civil Rule 56(c) provides that summary judgment is only appropriate when there is "no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law", the grant of summary judgment in favor of Rice by the trial court was error.

Alternatively, we conclude that the effect of the court's order requiring the assignment to the McKnights can be appropriately analyzed in terms of the constructive trust doctrine.

---

**2.** If his attorney had advised such a course of conduct the attorney would share complicity in the wrong. *People v. District Court*, 29 Colo. 182, 68 P. 242 (1901); *In re Bongfeldt*, 22 Cal. App.3d 465, 99 Cal.Rptr. 428 (1971).

**3.** The rules of enforceability of contracts in general are applicable in determining the validity of assignments. *See* Restatement (Second) of Contracts § 317 comment c (1981).

**4.** § 178 states:

(1) A promise or other term of an agreement is unenforceable on grounds of public policy if legislation provides that it is unenforceable or the interest in its enforcement is clearly outweighed in the circumstances by a public policy against the enforcement of such terms.

(2) In weighing the interest in the enforcement of a term, account is taken of

(a) the parties' justified expectation,

(b) any forfeiture that would result if enforcement were denied, and

(c) any special public interest in the enforcement of the particular term.

(3) In weighing a public policy against enforcement of a term, account is taken of

(a) the strength of that policy as manifested by legislation or judicial decisions,

(b) the likelihood that a refusal to enforce the term will further that policy,

(c) the seriousness of any misconduct involved and the extent to which it was deliberate, and

(d) the directness of the connection between that misconduct and the term.

The constructive trust may be defined as a devise used by chancery to compel one who unfairly holds a property interest to convey that interest to another to whom it justly belongs. When a court of equity finds that a defendant is the holder of a property interest which he retains by reason of unjust, unconscionable, or unlawful means, it takes such interest from the defendant and vests it in the wronged party.

G. Bogert, Trust and Trustees § 471, at 3 (rev. 2d ed. 1978); *see also* Restatement (Second) of Trusts § 1 comment e (1959); Restatement of Restitution § 160 (1937). By ordering Van Hatten to assign the insurance claim to the McKnights, Judge Taylor, in effect, determined that such property justly should belong to the McKnights. It is appropriate, in our view, to treat Van Hatten as a constructive trustee of the claim, under a constructive trust created as of the date of the court's order, March 26, 1981.

Whether Mr. Rice had notice of the court order before he obtained the written assignment from Van Hatten is a fact which will have to be determined on remand. If notice existed, the assignment was ineffective under the constructive trust doctrine as well as for reasons of public policy.

> [I]f the trust property or its product can be traced into the hands of a third party, a constructive trust may be imposed upon the property in the hands of the third party unless he is a bona fide purchaser for value and without notice.

**5.** AS 34.35.430(a)(3) states:
> An attorney has a lien for his compensation, whether specifically agreed upon or implied, as provided in this section
> ....
> (3) third, upon money in the hands of the adverse party in an action or proceeding in which the attorney is employed from the giving of notice of the lien to that party[.]

**6.** *Jacobs v. Jacobs,* 100 W.Va. 612, 131 S.E. 455 (1926); *Austin v. Prudential Trust Co.,* 112 Kan. 545, 212 P. 77 (1923); *In re Brittons Will,* 187 Misc. 70, 60 N.Y.S.2d 466 (Surrogate's Ct.1946).

**7.** Under the Uniform Commercial Code as enacted in Alaska, oral assignments for security

Bogert, *supra* § 471, at 5–6; *see also Baldwin v. Taplin,* 113 Vt. 291, 34 A.2d 117 (Vt.1943).

**B. The Attorney's Lien**

■■■ Rice's claim of priority to the insurance proceeds based on a statutory attorney's lien pursuant to AS 34.35.430(a)(3) does not strengthen its case.[5] An attorney's lien can only attach to property of the client.[6] Here, Van Hatten was a constructive trustee and not the owner of the insurance claim when the lien was perfected.

**C. The Oral Assignment**

■■■ Rice also claims priority based on the alleged oral assignment of the insurance proceeds to the extent necessary to cover attorney's fees for the criminal cases. The applicable rule to determine priority in this case [7] is expressed in § 342 of the Restatement (Second) of Contracts (1981):

> Except as otherwise provided by statute, the right of an assignee is superior to that of a subsequent assignee of the same right from the same assignor, unless (a) the first assignment is ineffective or revocable or is voidable by the assignor or by the subsequent assignee....

*See also* J. Calamari & J. Perillo, Contracts § 18–19, at 655 (1977); 4 A. Corbin, Corbin on Contracts § 902, at 615 (1951).

■■■ In the present case, Van Hatten could have discharged Rice from representing him on the yet to be filed criminal cases as of the date of the court order to assign, March 26, 1981. *See* Alaska Code of Prof. Resp. DR 2–110(B)(4).[8] In this event, Rice

where the collateral is not in the possession of the secured party are invalid. AS 45.09.-203(a)(2). However, this rule does not apply to the transfer of a claim under a policy of insurance. AS 45.09.104(7). Thus the common law rules of priority among assignees are applicable. *See* Restatement (Second) of Contracts § 342 comment c (1981).

**8.** DR 2–110(B)(4) provides:
> A lawyer representing a client before a tribunal, with its permission if required by the rules, shall withdraw from employment, and a lawyer representing a client in other matters shall withdraw from employment, if:
> ....

would have been obligated to relinquish any interest in the insurance claim to the extent he had not performed services before learning of his termination. *See* Alaska Code of Prof.Resp. DR 2–110(A)(3).[9] The oral assignment was thus revocable as of March 26, 1981, and hence Rice is not entitled to priority based on this assignment except for services rendered on the criminal cases before Rice received notice of the court order to assign.[10] The question of when Rice received notice of the court order, and the extent of services performed by it prior to this date are to be determined on remand.

## D. The McKnight Assignment

The March 26, 1981 court order reads in part, "Defendant [Richard Van Hatten] shall execute and deliver to plaintiffs [the McKnights] an assignment (up to the amount of plaintiffs' judgment) of any recovery he may obtain by virtue of his Federal Court insurance claim litigation." The actual assignment, prepared by the McKnights' attorney, reads in part, "Defendant Richard Van Hatten hereby assigns to Alice E. McKnight and Charles L. McKnight his share (after all litigation costs and attorney's fees) of any recovery ...." The McKnights claim that "all litigation costs and attorney's fees" includes only fees in the insurance case. Rice claims that this phrase also excepts from the assignment attorney's fees incurred in the criminal cases.

▮▮▮▮ We conclude that Rice's claim is without merit because the McKnights' attorney did not know of the criminal cases when he prepared the assignment and clearly did not intend the assignment to except fees from them. The fact that the assignment was intended to exclude only Rice's contingent fee in the civil case and not fees for the criminal cases was made plain at the September 1, 1981 hearing at which the court instructed Van Hatten to execute the document.[11]

---

(4) He is discharged by his client.

**9.** DR 2–110(A)(3) provides:
> (3) A lawyer who withdraws from employment shall refund promptly any part of a fee paid in advance that has not been earned.

**10.** Rice's right to be compensated for services rendered after the court order, but before Rice received notice of the order is supported by § 343 of the Restatement (Second) of Contracts (1981), which provides:
> If an assignor's right against the obligor is held in trust or constructive trust for ... another ... [,] an assignee does not so hold it if he gives value and becomes an assignee in good faith and without notice of the right of the other.

Rice, by performing services without notice of the order would become an assignee in good faith under the oral assignment to the extent of the value of the services performed before notice was received.

**11.** The McKnights' counsel stated at this hearing:
> [T]he court entered its order back in March ordering Mr. Van Hatten to execute and deliver to plaintiffs an assignment in the insurance claim litigation. And here we are in September and he hasn't done it. And evidently in the meantime he's executed some kind of assignment to Mr. Rice to cover his representation in criminal cases that weren't even in existence back when this court entered its order.
>
> I would suggest to the court that Mr. Van Hatten's right to assign the proceeds of that federal case expired when—other than to Mrs. McKnight,—expired when the court ordered them to assign it to Mrs. McKnight. Now it's possible I suppose—I don't know how large his claim is, but it's possible that Mrs. McKnight's judgment can be paid and there will still be money left over for a subordinate assignment to Mr. Rice. I don't know, you know, what the dollar amount involved in that case is. But I think that we have a right to an assignment; and that our assignment is entitled to priority as of the date this court entered its order, which is March 26, which if I read correctly between the lines should predate any assignment that Mr. Van Hatten made to Mr. Rice.... Now the court asked if I had a copy of the assignment and I did. This is my file copy but if you want I can make a copy.
>
> THE COURT: No, I was ...
>
> *Counsel for McKnight:* Well, I tender it to the court because it is, in my opinion, a very innocuous document that also—and I wasn't ordered to do this, but also provides that the assignment is subordinate to Mr. Rice's contingent attorney's fee.

For these reasons the judgment of the superior court is REVERSED and the case is REMANDED for further proceedings.[12]

**12.** We do not rule on Rice's contention that Richard Van Hatten's share of the insurance proceeds is exempt from the court order under the Alaska homestead exemption contained in AS 09.35.090(a). The factual basis for this contention is lacking on the record before us and the briefing of legal points involved is inadequate. We also do not consider Rice's cross-appeal for attorney's fees since our disposition of this case renders that issue moot.