**Scott H. YOUNG, Appellant,**

v.

**Cheryl K. LOWERY, Appellee.**

No. S–13180.

Supreme Court of Alaska.

Dec. 24, 2009.

Mary A. Gilson, Allison E. Mendel, Mendel & Associates, Anchorage, for Appellant.

Steven P. Gray, Law Office of Steven P. Gray, Kodiak, for Appellee.

Before: FABE, Chief Justice, EASTAUGH, CARPENETI, WINFREE, and CHRISTEN, Justices.

*OPINION*

WINFREE, Justice.

## I. INTRODUCTION

A husband and wife sought a divorce and the division of their marital property. The trial court granted the divorce and divided the property unequally, awarding the wife a larger share. As part of the division, the court awarded the wife a share of the husband's military pension, ordered him to pay her a portion of the pension payments he had already received, and authorized a constructive trust on his assets in the event he causes the amount of her payments from his pension to decrease. The husband challenges specific aspects of the pension division and the overall property division. We affirm the property division as within the trial court's discretion, but we vacate, reverse, and remand certain elements of the pension division.

## II. FACTS AND PROCEEDINGS

### A. Facts

Cheryl Lowery and Scott Young were married in 1994. Each had three children from an earlier marriage. Neither Lowery nor Young adopted the other's children, and they had no children together. The couple moved from Florida to Kodiak in 2000, where Young worked for the United States Coast Guard.

In 2001 Lowery's two sons were killed, and Lowery received a $655,802 wrongful death

settlement in 2002. The funds were placed in joint accounts actively managed by Young.

The marriage became strained in November 2006. Lowery entered a residential alcohol-abuse treatment facility in California in early December 2006. She spent one month in treatment and another in aftercare. Young and Lowery never reunited, and the trial court determined the functional end of their marriage was approximately November 30, 2006. Lowery filed for divorce in January 2007. She then moved to Florida and found work with a former employer. Young moved to Arkansas in March 2007 and retired from Coast Guard service on May 1, 2007.

### B. Proceedings

Trial was held in early April 2008. The trial court calculated Young's Coast Guard pension value as $706,125 and determined the marital portion of the pension to be 50.68%. The court found that Young maintained a 55% survivor benefit for Lowery, ensuring that if he predeceased her, she would continue to receive a share of his retired pay for the rest of her life.[1] The court also found that Young received military disability benefits. Under current federal law, a veteran cannot receive the full amount of both retired and disability pay and must waive a portion of retired pay in order to receive disability pay.[2] The court recognized this, but concluded that "[n]either party presented any persuasive evidence on exactly how much [Young's] retirement benefits will be reduced."[3]

The trial court calculated the value of the parties' other marital assets to be $689,725. The court noted that the bulk of these assets originated as Lowery's wrongful death settlement, but concluded that the settlement proceeds had been transmuted into marital property. Adding the marital portion of the Coast Guard pension, the court calculated the total value of the marital estate to be $1,047,589.

The trial court awarded Lowery one-half of the marital portion of Young's pension, which amounted to $178,932. The court also ruled that "[t]he balance of the marital property should be divided on an unequal basis in order to allow [Lowery] to secure additional retirement and health benefits or equivalent financial security." It awarded Lowery $524,298 (roughly 75%) of the non-pension marital property and awarded Young the remaining $165,428. Lowery thus received roughly 67% of the total marital property, including the equally divided Coast Guard pension. The court ordered Young to pay Lowery $7,372, "representing one half of the marital portion of the retirement pay he

1. When a service member dies, retired pay generally ceases and the service member's spouse loses that source of income. Purchasing survivor benefits allows a service member to ensure that a surviving spouse continues to receive a portion of the service member's monthly retired pay even after the service member's death. A service member purchases survivor benefits by paying a fee that is deducted from the monthly retired pay. 2 BRETT R. TURNER, EQUITABLE DISTRIBUTION OF PROPERTY, § 6:2, at 6 (3d ed.2005).

2. 38 U.S.C. § 5305. Young was awarded disability pay retroactive to June 1, 2007, but his disability pay was being withheld to prevent a double payment. Legally, however, the retired pay is considered waived during that period. *See id.*
   Veterans find it advantageous to receive disability pay in lieu of retired pay because disability pay is not taxable income, but retired pay is. *Clauson v. Clauson,* 831 P.2d 1257, 1259 n. 2 (Alaska 1992) (citing *Mansell v. Mansell,* 490 U.S. 581, 583–84, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989)).

3. The law governing the interplay between military pensions and military disability payments has changed in recent years, and calculating the amount of retired pay a veteran must waive to receive disability pay is difficult. Before 2004 the amount of retired pay waived was the amount of disability pay received. 38 U.S.C. § 5305 (2000) *amended by* Veterans Benefits Improvement Act of 2004, Pub.L. No. 108–454, Tit. III, § 308(b), 118 Stat. 3598, 3614 (2004). Congress passed a law effective in 2004 allowing veterans with a disability rating of 50% or higher (as determined by the Department of Veterans Affairs) to concurrently receive disability and retired pay. National Defense Authorization Act for Fiscal Year 2004, Pub.L. No. 108–136, Div. A, Tit. VI. § 641, 117 Stat. 1392, 1511 (2003) (codified at 10 U.S.C. § 1414(c) (2006)). The law created a ten year phase-in period, during which veterans must waive a portion of retired pay that is less than their disability pay. Each year the waived retired pay is a smaller portion of the disability pay, and by 2014 veterans will receive the full amount of each entitlement. 10 U.S.C. § 1414(c).

received for the period from May 1, 2007 through April 30, 2008" and to continue purchasing survivor benefits for Lowery.

The trial court entered a qualified order instructing the Coast Guard to distribute each spouse's share of the retired pay directly to that spouse. The qualified order requires division and payment according to the percentages announced in the court's written decision, but states that Lowery's monthly payment "shall not be less than $614.36 per month with cost-of-living increases." The order also provides:

> If at any time after the entry of this order, action is taken which causes a reduction in [Young's] disposable retired pay, other than his election of benefits under the Survivor Benefit Plan required hereunder, from less than it would have been on the date of this Order absent such action(s), [Young] shall be deemed to have created a constructive trust for [Lowery] under Federal and all applicable State law for the amount by which payments to [Lowery] are reduced. [Lowery] shall thereupon have an interest in, and the right to immediate possession of, so much of [Young's] property as is necessary to satisfy said trust.

Young moved for reconsideration. The trial court corrected a typographical error in the original written order but otherwise denied the motion. Young appeals.

## III. STANDARD OF REVIEW

■■■ We review the equitable division of marital property for abuse of discretion and will affirm the trial court unless the division is clearly unjust.[4] Factual findings supporting the division will not be reversed unless clearly erroneous.[5] We "review de novo whether the trial court applied the correct legal rule in exercising its discretion."[6] Whether the trial court's equitable division of a military pension is consistent with federal law is a question of law we review de novo.[7]

## IV. DISCUSSION

### A. The Military Pension Division

Young makes three arguments challenging the division of his military pension. First, he argues the $614.36 minimum payment to Lowery violates federal law by effectively dividing disability payments that should not be subject to division. Second, he argues the creation of a constructive trust was erroneous. Third, he argues the trial court abused its discretion by requiring him to pay the majority of the expense for Lowery's survivor benefits. We address each argument in turn.

### 1. It was error to order Young to pay Lowery no less than the fixed-dollar sum of $614.36 per month.

■ The trial court determined that the marital portion of Young's pension was 50.68% and awarded Lowery half of that portion, or 25.34%, of Young's total monthly retired pay. After issuing a written decision, the court issued a qualified order incorporating this percentage. The qualified order also states: "Provided, however, [Lowery's] award shall not be less than $614.36 per month with cost-of-living increases." Young argues that because he is required by law to use a portion of his $2,424.45 monthly pension payment as a substitute for his disability payment, the court-ordered $614.36 minimum payment to Lowery erroneously reduces his disability payment. We agree.

Young retired in May 2007 and was awarded $2,593 per month in total retired pay. He elected survivor benefits, and the monthly fee of $168.55 was deducted from his total retired pay, leaving him with disposable retired pay of $2,424.45. On April 1, 2008, a week before trial, Young was awarded disability pay retroactive to June 1, 2007. Because a portion of his retired pay must be waived to receive that disability pay, at the time of trial Young's disposable retired pay was actually less than $2,424.45, but the ex-

4. *Silvan v. Alcina,* 105 P.3d 117, 120 (Alaska 2005).

5. *Hooper v. Hooper,* 188 P.3d 681, 687 (Alaska 2008).

6. *Schmitz v. Schmitz,* 88 P.3d 1116, 1122 (Alaska 2004).

7. *See Clauson,* 831 P.2d at 1261–62.

act amount was unknown.[8] The court awarded Lowery 25.34% of Young's monthly disposable retired pay, but required Young to pay Lowery no less than $614.36 per month. Although $614.36 is exactly 25.34% of $2,424.45, it is more than 25.34% of the actual disposable retired pay Young was receiving at the time of trial.

■ State courts have limited authority to equitably divide a military pension upon divorce. The United States Supreme Court held in *McCarty v. McCarty*[9] that federal law on military pensions preempted state domestic relations law and barred state courts from treating military retired pay as marital property divisible upon divorce.[10] The following year Congress overruled *McCarty* by passing the Uniformed Services Former Spouses' Protection Act (USFSPA),[11] allowing state courts to treat a portion of a service member's military retired pay—termed "disposable retired pay"[12]—as marital property divisible upon divorce according to state domestic relations law.[13] Disposable retired pay is defined in the USFSPA as total (gross) monthly retired pay less: (1) amounts waived in order to receive military disability pay; (2) deductions for the cost of survivor benefits; and (3) other deductions

not pertinent here.[14] After Congress passed the USFSPA the Supreme Court ruled in *Mansell v. Mansell*[15] that a state court may consider only USFSPA-defined disposable retired pay as marital property divisible upon divorce.[16] Accordingly, a court may not equitably divide total retired pay; it may equitably divide only the amount of retired pay remaining after the court deducts waived retired pay and the cost of purchasing survivor benefits.

Failing to limit the property division to Young's actual disposable retired pay violates the USFSPA. It was therefore error to set the minimum monthly payment at $614.36 per month and we must vacate this portion of the qualified order.

■ The trial court also ordered Young to pay Lowery $7,372, "representing one half of the marital portion of the retirement pay he received for the period from May 1, 2007 through April 30, 2008." Young correctly argues this sum is erroneously calculated because it is based on the monthly figure and does not account for retired pay waived to receive disability benefits, which were awarded retroactive to June 1, 2007. We therefore must also reverse this portion of the court's

---

**8.** The trial court found that "[n]either party presented any persuasive evidence on exactly how much [Young]'s retirement benefits will be reduced." Lowery argues the burden was on Young to produce this evidence and, having failed to do so, he cannot now claim error. At the close of trial, the court indicated the evidence presented was sufficient for the court to make findings on the issue. It allowed Lowery the option of moving within ten days to offer further evidence of the amounts waived, but did not give that option to Young. Although Young's expert was not able to supply persuasive evidence at trial (being unaware of the recent changes in federal law), because Young was not given additional time as Lowery was to procure evidence, we conclude he did not forfeit his ability to claim error on appeal.

**9.** 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981).

**10.** *Id.* at 223, 235–36, 101 S.Ct. 2728.

**11.** Pub.L. No. 97–252, Tit. X, § 1002, 96 Stat. 730 (1982) (codified as amended at 10 U.S.C. § 1408 (2006)).

**12.** The initial language of the Act used the term "disposable retired or retainer pay," but our

decision is not affected by the change to the current term. *Id.; Abernethy v. Fishkin,* 699 So.2d 235, 237 n. 1 (Fla.1997).

**13.** 10 U.S.C. § 1408(c)(1) ("Subject to the limitations of this section, a court may treat disposable retired pay payable to a member ... either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court.").

**14.** 10 U.S.C. § 1408(a)(4).

**15.** 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989).

**16.** *Id.* at 589, 109 S.Ct. 2023. The opinions in *McCarty* and *Mansell* specifically barred the treatment of total retired pay as community property, the approach to marital property division used in California, where both cases originated. *McCarty,* 453 U.S. at 232–33, 101 S.Ct. 2728; *Mansell,* 490 U.S. at 584 n. 2, 109 S.Ct. 2023. We held the *Mansell* decision applies to our system of equitable division in *Clauson,* 831 P.2d at 1262.

decision and remand for re-calculation of the correct amount to be paid to Lowery.

## 2. It was error to create a constructive trust, but other means of indemnification would be appropriate.

■ Because Lowery receives a proportional share of Young's disposable retired pay, any reduction in the amount of total disposable retired pay—occasioned, for example, by an increase in Young's disability pay requiring additional waiver of retired pay—would cause a decrease in Lowery's monthly payment. The qualified order provides that if Young takes future action to reduce his disposable retired pay, a constructive trust will be created for the amount that Lowery's payments are reduced, allowing Lowery "the right to immediate possession" of Young's property sufficient to satisfy that amount. Young objected to the trial court's inclusion of the constructive trust language in the qualified order, arguing that the conversion of retired pay to disability pay under federal law is not the kind of unconscionable conduct necessary to support the imposition of a constructive trust.

When the trial court entered the qualified order, the amount of Young's retired pay converted to disability pay was unknown.[17] On appeal Young's argument concerns the effect of the constructive trust on the government's initial conversion of his retired pay to disability pay. That portion of his argument is moot in light of our reversal of the trial

court's calculation of Young's disposable retired pay. However, the effect of the constructive trust on possible future decreases in Young's disposable retired pay is included in Young's argument and is still at issue.

■ "A constructive trust is an equitable remedy that becomes available upon clear and convincing proof that the party against whom the trust will be imposed has been unjustly enriched by receiving assets that rightly belong to the party in whose favor the trust will be created."[18] "[T]he trust arises to prevent the property holder from retaining property obtained 'by reason of unjust, unconscionable, or unlawful means.'"[19]

The trial court did not expressly forbid Young from taking action that would reduce Lowery's monthly retired pay;[20] instead it required him to make up that difference if he elected to do so. Young therefore would not violate the terms of the court's order by waiving more retired pay, nor would he violate any state or federal law by doing so. We also do not believe that choosing to receive more disability pay in lieu of retired pay to reduce one's tax burden, which federal law permits, is so "unjust" or "unconscionable" as to warrant a constructive trust.[21] But the trial court may expressly order Young not to reduce his disposable retired pay and require Young to indemnify Lowery for any amounts by which her payments are reduced below the amount set on the date

17. *See* note 8, above.

18. *Riddell v. Edwards*, 76 P.3d 847, 852 (Alaska 2003) (citing *McKnight v. Rice, Hoppner, Brown & Brunner*, 678 P.2d 1330, 1334–35 (Alaska 1984) and *City of Lakewood v. Pierce County*, 144 Wash.2d 118, 30 P.3d 446, 450 (2001)).

19. *Id.* (quoting *McKnight*, 678 P.2d at 1335).

20. Courts in other jurisdictions have concluded that *Mansell's* prohibition against equitably dividing waived retired pay does not bar a court from enforcing a lawful equitable division by ordering the military spouse not to reduce disposable retired pay. *In re Marriage of Strassner*, 895 S.W.2d 614, 617–18 (Mo.App.1995); *Owen v. Owen*, 14 Va.App. 623, 419 S.E.2d 267, 269–70 (1992); *see also Abernethy*, 699 So.2d at 236–37, 240 (concluding that court may enforce final judgment where payment to spouse arose

"through an indemnification provision providing for alternative payments to compensate for reduction in non-disability retirement benefits divided as part of a property settlement agreement").

21. *See, e.g., Rausch v. Devine*, 80 P.3d 733, 744 (Alaska 2003) (holding grantor not entitled to constructive trust when he gratuitously quitclaimed property to woman and then sought return of property when relationship deteriorated because "the argument ... that it is unfair that [grantee] should hold title to something that [grantor] paid for" does not justify constructive trust); *Riddell*, 76 P.3d at 852–53 (vacating a constructive trust and noting that the surviving spouse of an incompetent woman could not have obtained his statutory benefits by "unjust, unconscionable, or unlawful means" because the superior court found the marriage was valid) (quoting *McKnight* 678 P.2d at 1335).

the amended qualified order is entered.[22] We vacate the portion of the qualified order relating to a constructive trust; on remand the court may in its discretion replace that language with an appropriate indemnity provision.

### 3. The trial court did not abuse its discretion with respect to the cost of the survivor benefit.

■ The trial court found that Young elected to provide Lowery a 55% survivor benefit and ordered Young to continue purchasing that benefit to protect Lowery's interest in Young's pension. Relying on our decision in *Hooper v. Hooper*,[23] Young contends the trial court abused its discretion because it did not explain the allocation of the survivor benefit cost.

As discussed above, the portion of a military pension which may be equitably divided upon divorce—disposable retired pay—already reflects a deduction for the cost to purchase survivor benefits.[24] As a result, the cost of purchasing survivor benefits is automatically allocated between the parties in the same proportion as their share of disposable retired pay.[25]

In *Hooper* we held the trial court abused its discretion in allocating the entire cost of purchasing survivor benefits to the husband, without explanation, when the marital property was split 67% to 33% in the wife's favor.[26] The pension in *Hooper* was a Federal Employees Retirement System (FERS)

pension, not a military pension,[27] and federal law does not limit state courts' authority to divide FERS pensions upon divorce.[28] When a court divides a FERS pension the cost of survivor benefits is not automatically allocated; the court may allocate that cost as it sees fit.[29] The trial court in *Hooper* decided to allocate the entire cost of the FERS survivor benefit to the husband, but lacking an explanation for that decision, we could not determine if it was arbitrary or reasoned.[30]

Here federal law automatically allocates the cost of purchasing survivor benefits between the spouses—because Young received 74.66% of the retired pay, federal law allocates to him 74.66% of the cost of purchasing survivor benefits.[31] Although it may have been permissible to re-allocate that cost some other way, perhaps by requiring Lowery to reimburse Young,[32] the trial court did not abuse its discretion by declining to do so.[33] We therefore affirm the order for continuing survivor benefits with the natural allocation of the cost under federal law.

### B. The Marital Property Division
### 1. The trial court did not commit legal error in dividing the marital property unequally.

Young argues the trial court committed three legal errors in dividing the parties' marital property unequally.

■ Young first argues the court's findings of fact lack the specificity required

**22.** *E.g., In re Marriage of Strassner*, 895 S.W.2d at 618 ("Under these circumstances it was within the trial court's discretion to prohibit husband from reducing his retirement pay or to indemnify wife for any breach.").

**23.** 188 P.3d 681.

**24.** 10 U.S.C. § 1408(a)(4)(D).

**25.** 2 TURNER, note 1, above, § 6:46, at 283.

**26.** 188 P.3d at 690–91.

**27.** *Id.* at 684.

**28.** 5 U.S.C. § 8345(j)(1).

**29.** *See* 5 C.F.R. § 838.807.

**30.** 188 P.3d at 690–91.

**31.** *See* 10 U.S.C. § 1408(a)(4)(D).

**32.** In *Berry v. Berry*, 978 P.2d 93 (Alaska 1999), we held that if a spouse desired the protection of a survivor benefit and were willing to bear the cost, then the other spouse "should be required to facilitate covering her under the survivor benefit plan to the extent of her interest." *Id.* at 98. However, we did not describe how to execute this arrangement.

**33.** Professor Turner recognizes that a court could override the default allocation by requiring one party to reimburse the other outside the parameters of a qualified domestic relations order, but characterizes this arrangement as a "needless burden upon all involved" and suggests this area of federal law be amended. 2 TURNER, note 1, above, § 6:46, at 283.

to justify an unequal property division, citing *Lang v. Lang*.[34] When dividing marital property, the trial court must consider the factors enumerated in AS 25.24.160(a)(4).[35] These factors are "not exhaustive, and the trial court need not make findings pertaining to each factor, but its findings must be sufficient to indicate the factual basis for the conclusion reached." [36]

In undertaking the property division in this case, the trial court considered the duration of the marriage, the parties' ages and health (specifically noting Lowery's prior need for substance abuse treatment), and their earning capacities, future access to health benefits, financial conditions, and expected retirement incomes. The court's justification for the unequal division was Lowery's need "to secure additional retirement and health benefits or equivalent financial security." Unlike the trial court decision reversed in *Lang*,[37] the order adequately explains the factual basis for the property division.

Young next argues that the trial court erred in attempting to equalize the parties' financial conditions rather than considering only Lowery's reasonable needs.[38] After separately dividing Young's pension, the court ruled the balance of marital property "should be divided on an unequal basis in order to allow [Lowery] to secure additional retirement and health benefits or equivalent financial security." Young links this statement with the court's earlier observation that Young is in a "far superior financial condition" and will receive greater health and retirement benefits than Lowery, and argues that the court incorrectly tried to give Lowery financial security "equivalent" to his own.

We disagree. The court's statement about "equivalent financial security" referred to Lowery's need for additional retirement and health benefits, not Young's financial condition.[39] A court properly considers "the financial condition of the parties, including the availability and cost of health insur-

---

**34.** 741 P.2d 1193 (Alaska 1987).

**35.** AS 25.24.160(a)(4) provides in pertinent part:

[T]he division of property must fairly allocate the economic effect of divorce by being based on consideration of the following factors:
(A) the length of the marriage and station in life of the parties during the marriage;
(B) the age and health of the parties;
(C) the earning capacity of the parties, including their educational backgrounds, training, employment skills, work experiences, length of absence from the job market, and custodial responsibilities for children during the marriage;
(D) the financial condition of the parties, including the availability and cost of health insurance;
(E) the conduct of the parties, including whether there has been unreasonable depletion of marital assets;
(F) the desirability of awarding the family home, or the right to live in it for a reasonable period of time, to the party who has primary physical custody of children;
(G) the circumstances and necessities of each party;
(H) the time and manner of acquisition of the property in question; and
(I) the income-producing capacity of the property and the value of the property at the time of division.

**36.** *Nicholson v. Wolfe*, 974 P.2d 417, 422 (Alaska 1999) (citing *Brooks v. Brooks*, 677 P.2d 1230,

1233 (Alaska 1984) and *Merrill v. Merrill*, 368 P.2d 546, 548 n. 10 (Alaska 1962)).

**37.** 741 P.2d at 1196 (vacating and remanding where trial court "gave no indication of which, if any, of the *Merrill* factors [codified and expanded in AS 25.24.160(a)(4)] it weighed in deciding that its allocation was 'fair and equitable' ").

**38.** Young errs in relying on our discussion of reasonable needs in *Odom v. Odom*, 141 P.3d 324, 341 (Alaska 2006). In *Odom* we held that before awarding one spouse's separate property to the other spouse, a court must first "determin[e] whether an unequal division of the marital estate" would "balance the equities ... in light of the parties' reasonable needs." *Id.* at 339–40. We did not hold that the division of marital property is determined by looking at only one party's reasonable needs. In the context of equitable division of marital property, "reasonable needs" is a relative concept: "The most significant equitable distribution factor outside the marital partnership theory is the future financial needs of the parties. The theory behind this factor is simple: more marital property should go to the party who has the most need for it." 2 TURNER, note 1, above, § 8:15, at 866. Factors may include comparative future earning capacity, assets, liabilities, age, health, and education. *Id.* §§ 8.16–8.20, at 867–82.

**39.** At oral argument on appeal Young's counsel conceded this interpretation may be correct.

ance,"[40] when dividing marital property. The court therefore committed no legal error in awarding a greater share of the marital assets to Lowery so she could either purchase adequate health and retirement benefits or maintain a financial cushion to provide similar protection.

Finally, Young argues the trial court erred in determining that his disability pay justifies a greater award to Lowery. He contends the court erroneously considered his disability pay as income without recognizing it compensates him for a disability (primarily migraine headaches) that may cause chronic health problems or prevent him from working. We disagree. Young's benefits guarantee him some financial protection in the event his health problems become debilitating and he cannot work.[41] Lowery has no guaranteed protection in the event her own health issues—problems with alcohol and depression—become debilitating, and the court therefore awarded her a greater share of the assets so she can obtain some security in this regard. Because the court may properly consider each party's financial condition, including the availability of health insurance and disability pay, it did not err in considering Young's disability pay.

### 2. The trial court did not abuse its discretion in dividing the marital property unequally.

The trial court divided the marital share of Young's military pension equally but awarded Lowery roughly 75% of the remaining marital property, resulting in an overall award to Lowery of roughly 67% of the marital assets. The court divided the marital property unequally primarily to enable Lowery to secure additional health and retirement benefits. Young argues the evidence does not show Lowery needs additional benefits and that the court abused its discretion by considering that the source of the marital assets was Lowery's wrongful death settlement proceeds.

Young correctly asserts that Lowery testified to having no health problems presently preventing her from working and that she was eligible for health insurance through her employer once the divorce became final. But Lowery has a history of alcoholism and depression stemming from the death of her sons, which may continue or worsen in the future and require her to re-enter treatment or residential therapy. Because her currently available health benefits are tied to employment, she may well need the ability to fund her own treatment in the future. The finding that Lowery needs to secure additional health benefits, or their financial equivalent, is not clearly erroneous.

Young also argues that Lowery presented no evidence that her retirement needs are unmet. At the time of trial, Lowery was forty-four years of age and earning roughly $45,000 per year. No evidence was presented that she has a retirement plan through her employer, and her portion of Young's pension is modest. Given her age and the small portion of Young's pension that she receives, we are not convinced the court clearly erred in finding Lowery needs additional retirement security.

Finally, Young asserts the trial court abused its discretion by assigning undue weight to the fact that almost all of the non-pension marital assets originated from Lowery's wrongful death settlement. He contends that "the origin of the marital estate does not justify an unequal division absent some findings that [Lowery's] needs justify it." But the court did not find that the origin of the marital assets was a justification for the unequal division. And if this factor did play some role in the court's decision, it would not necessarily be improper. A trial court may properly consider a spouse's substantial contribution of separate property in making an unequal division of the marital estate.[42] Awarding Lowery a greater share of money originally intended to com-

**40.** AS 25.24.160(a)(4)(D).

**41.** The trial court found that neither party had any serious health problems that currently prevented them from working, a finding Young does not challenge.

**42.** *Laing v. Laing,* 741 P.2d 649, 654 (Alaska 1987).

pensate her for the loss of her sons is not clearly unjust.

The overall property division—roughly two-thirds to Lowery, one-third to Young—is a significant departure from the fifty-fifty norm, but not outside the parameters of the trial court's broad discretion. We have previously concluded that awarding two-thirds of the marital property to one spouse was not an abuse of discretion when justified by the long duration of the marriage and that spouse's lower income, greater responsibility for child-rearing, and need to refinance or repair the marital home.[43] In this case, the bulk of marital assets came from Lowery's separate property contribution; Young's decision to elect disability benefits has rendered Lowery's share of his pension quite modest; and the court determined that Lowery needed to obtain additional health and retirement benefits, or equivalent financial security. We therefore conclude the court did not abuse its discretion in awarding Lowery two-thirds of the marital assets.

## V. CONCLUSION

We AFFIRM the unequal division of marital assets as within the trial court's discretion. We VACATE that portion of the qualified order expressing Lowery's share of monthly retired pay as a minimum fixed-dollar amount and that portion authorizing a constructive trust on Young's assets. We REVERSE the award of accrued retired pay owed by Young to Lowery and REMAND with instructions to re-calculate this figure. We AFFIRM the trial court's allocation of the survivor benefit cost.

---

**43.** *Hooper,* 188 P.3d at 685–87.