*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JASON R. GLOVER, | ) | |
| | ) | Supreme Court No. S-14610 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-10-08789 CI |
| v. | ) | |
| | ) | O P I N I O N |
| BEVERLY E. RANNEY, | ) | |
| | ) | No. 6854 - December 13, 2013 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Mark Rindner, Judge.

Appearances: Jason R. Glover, pro se, Los Angeles California, Appellant. Maryann E. Foley, Law Office of Maryann E. Foley, Anchorage, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

WINFREE, Justice.

## I.    INTRODUCTION

A husband and wife divorced in 2011. They entered into a property settlement agreement, providing that the wife would receive 55% of the marital estate and 50% of the marital share of the husband's military pension. The parties then disputed how to properly effectuate the settlement agreement — disagreeing over what portion of the husband's pension was divisible, whether the division could require indemnification for reductions in disposable retirement pay, and whether the division

could include a survivor benefit plan annuity not mentioned in the settlement agreement. They submitted competing orders to effectuate the military pension division, and the superior court accepted the wife's order. The husband appeals the military pension division, arguing that: (1) he was denied the opportunity to present evidence; (2) the superior court violated federal law by dividing gross pay, disability pay, and more than 50% of disposable retirement pay; (3) the superior court's final order awarding survivor benefits did not comply with the parties' settlement agreement and ignored the parties' stipulated length of marriage; (4) the superior court erred by awarding the wife additional compensation without explanation; and (5) the superior court incorrectly barred the parties' children from survivor benefit coverage.

Because the superior court ignored the stipulated length of marriage and awarded the wife a survivor benefit exceeding her share of the husband's military pension, we reverse and remand on those two issues. We otherwise affirm the superior court's decision.

## II.    FACTS AND PROCEEDINGS

Jason Glover and Beverly Ranney married on December 30, 1999 in Fairbanks. Beverly filed for divorce on July 6, 2010. Jason was employed by the United States Air Force during the entire marriage.

Jason and Beverly entered mediation and reached a property settlement agreement in May 2011, dividing the marital property 55% to 45% in Beverly's favor and dividing the marital portion of Jason's military pension 50% each. The agreement awarded Beverly "a percentage of Jason Glover's disposable military retired pay, to be computed by multiplying 50% times a fraction, the numerator of which is 122 months of marriage during . . . Jason Glover's creditable military service, divided by the member's total number of months of creditable military service."

The superior court held hearings and issued oral orders and findings in July 2011. Beverly and Jason then disputed proposed written findings and disagreed about how the superior court should effectuate the military pension division. Jason filed a proposed order and Beverly objected, arguing that it did "not contain all the language necessary to protect [her] rights." Beverly then filed a competing proposed order and Jason objected, arguing that:

> Ms. Glover's order ignores federal law by attempting to compute Ms. Glover's interest from a gross sum, rather than the disposable amount, and then subsequently attempting to force Mr. Glover to indemnify Ms. Glover for any mandatory offsets used to calculate disposable income, thereby attempting again to adopt a gross income approach to calculating her distribution.

Jason further argued that Beverly's proposed order incorrectly computed the amount of time the parties were married. Finally, Jason argued that Beverly's order incorrectly included a Survivor Benefit Plan because survivor benefits were not part of the parties' settlement agreement, there cannot be implied consent to survivor benefits, and "[i]f Ms. Glover wanted to have [survivor benefits] she should have submitted in writing the percentage amount commensurate with what she would have receive [sic] if Mr. Glover were alive, not asking for an increased benefit due to his death."

The superior court scheduled a hearing for October 14, explaining that Jason's and Beverly's counsel were to confer before the hearing and if they "are able to agree on the pleadings and resolve their differences, they shall notify the court and file the pleadings to which they both agree prior to the date of the hearing. If that occurs the hearing will be vacated." Before the hearing Jason emailed Beverly, her attorney, and his own attorney, requesting that all correspondence in the case be sent directly to him and not his attorney. Jason's email suggested a change to his proposed military retirement order to provide Beverly with survivor benefits coverage. He explained that

"[i]f this meets the as of yet unknown goals of Ms. Glover then it can be submitted to the court in order to prevent the need of an additional court date."

The next day Jason's attorney notified the superior court that: (1) the parties had agreed to amended findings of fact; (2) the only issues remaining before the court related to the military qualifying domestic relations order (QDRO); and (3) the parties agreed that the court could sign either QDRO that it received from the parties. Jason's attorney also explained that Jason still would "like the opportunity to address the Court on October 14, and to have his QDRO expert . . . available by phone to answer any of the Court's questions or concerns regarding the dueling QDRO's." Three days later Beverly notified the superior court that "[c]ounsel for the parties have communicated and in light of the recent filing of the Amended Findings of Fact and Conclusions of Law, the parties are uncertain if the court finds it necessary to conduct the . . . hearing."

The superior court vacated the hearing "due to the fact that the parties have filed an Amended Findings of Fact and Conclusion of Law, which has been approved as to form and contents therein." The court explained that it would sign one of the QDROs submitted by the parties. That same day the superior court entered amended findings of fact and conclusions of law, a decree of divorce, and Beverly's proposed order dividing Jason's military pension.

Jason then moved to vacate the pension division, arguing that it incorrectly divided gross income instead of disposable retirement pay. He further argued that in his email he had advised his counsel and Beverly's counsel that he "did not want the order signed until corrections were made" and that counsel should not "proceed with invalid orders." Beverly opposed the motion, arguing that the order divided only disposable retired pay and that Jason's email did not direct counsel not to proceed — it simply suggested an amendment to a proposed order.

The superior court denied Jason's motion to vacate. Jason appealed and appears before us pro se. He raises the following points on appeal regarding the division of his military pension: (1) the superior court erred by not allowing Jason to present evidence; (2) the superior court violated the Uniformed Services Former Spouses' Protection Act (the Act) by dividing gross pay, by dividing disability pay, and by dividing over 50% of retired pay; (3) the superior court erred by disregarding the stipulated property settlement agreement and accepting a military retirement order that violated federal law; (4) the superior court erred by awarding Beverly additional compensation, outside the scope of the settlement agreement, without explanation; and (5) the superior court erred by barring the parties' children from coverage under Jason's retirement plan.

## III. STANDARD OF REVIEW

"We construe property settlement agreements in divorce actions in accordance with basic principles of contract law. Questions of contract interpretation are reviewed de novo."[1] "We review the equitable division of marital property for abuse of discretion . . . ."[2] We review factual findings supporting a property division for clear error.[3] We review de novo whether the superior court applied the correct legal rule.[4]

---

[1]     *Hartley v. Hartley*, 205 P.3d 342, 346 (Alaska 2009) (citing *Zito v. Zito*, 969 P.2d 1144, 1147 (Alaska 1998)).

[2]     *Young v. Lowery*, 221 P.3d 1006, 1010 (Alaska 2009) (citing *Silvan v. Alcina*, 105 P.3d 117, 120 (Alaska 2005)).

[3]     *Id.* (citing *Hooper v. Hooper*, 188 P.3d 681, 687 (Alaska 2008)).

[4]     *Id.* (quoting *Schmitz v. Schmitz*, 88 P.3d 1116, 1122 (Alaska 2004)).

Whether the superior court's "division of a military pension is consistent with federal law is a question of law we review de novo."[5]

"A superior court's decision to deny a motion requesting an evidentiary hearing is subject to our independent review. A hearing is not necessary if 'there is no genuine issue of material fact before the court.' "[6]

## IV.    DISCUSSION

### A.    Military Pension Divisions And Survivor Benefits

The Act authorizes state courts to "treat disposable retired pay payable to a [service] member . . . either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court."[7] "The total amount of the disposable retired pay of a [service] member payable under all court orders . . . may not exceed 50 percent of such disposable retired pay."[8]

We have accepted the time rule method for dividing military pensions.[9] Under this method, "[t]he marital share of a pension is typically determined by the coverture fraction, whose numerator is the number of months of employment during coverture, and whose denominator is the total number of months of employment at the

---

[5]     *Id.* (citing *Clauson v. Clauson*, 831 P.2d 1257, 1261-62 (Alaska 1992)).

[6]     *Hartley*, 205 P.3d at 346-47 (quoting *Routh v. Andreassen*, 19 P.3d 593, 596 (Alaska 2001)) (footnotes omitted).

[7]     10 U.S.C. § 1408(c)(1) (2012).

[8]     *Id.* § 1408(e)(1).

[9]     *Tillmon v. Tillmon*, 189 P.3d 1022, 1031 n.32 (Alaska 2008) (citing *Faulkner v. Goldfuss*, 46 P.3d 993, 1003 (Alaska 2002)).

time of vesting."[10] The fraction is then multiplied by the percentage of the retirement awarded.[11]

Disposable retired pay does not include retired pay already waived for receipt of disability benefits,[12] or retired pay spent on the purchase of survivor benefits.[13] We have recognized that despite the bar on dividing retirement pay already waived to pay for disability benefits a "trial court may expressly order [a service member] not to reduce his disposable retired pay and require [the service member] to indemnify [a former spouse] for any amounts by which her payments are reduced below the amount set on the date [an] amended qualified order is entered."[14] We also have recognized that courts may determine that divorce agreements equitably dividing retirement benefits implicitly include survivor benefits.[15] Finally, we have explained that because survivor benefits are not disposable retired pay, "the cost of purchasing survivor benefits is

---

[10]    *Faulkner*, 46 P.3d at 1003 (citing *Wainwright v. Wainwright*, 888 P.2d 762, 763 (Alaska 1995)).

[11]    *See Tillmon*, 189 P.3d at 1031 (dividing a military pension 50%-50% and providing that the spouse "shall be entitled to a percentage of [the servicemember's] disposable military retired pay defined as [the number of months of marriage] divided by the number of months of [the servicemember's] military service times 50%").

[12]    *Mansell v. Mansell*, 490 U.S. 581, 594-95 (1989); *Clauson v. Clauson*, 831 P.2d 1257, 1261-62 (Alaska 1992).

[13]    10 U.S.C. § 1408(a)(4)(D).

[14]    *Young v. Lowery*, 221 P.3d 1006, 1012-13 (Alaska 2009) (citing *In re Marriage of Strassner*, 895 S.W.2d 614, 618 (Mo. App. 1995)).

[15]    *Zito v. Zito*, 969 P.2d 1144, 1147 (Alaska 1998) (addressing non-military pension and concluding that "[i]t was within the superior court's inherent power . . . to award . . . a survivor annuity" (quoting *Wahl v. Wahl*, 945 P.2d 1229, 1232 (Alaska 1997) (alterations in original))).

automatically allocated between the parties in the same proportion as their share of disposable retired pay."[16]

## B. The Superior Court Did Not Erroneously Deny Jason An Opportunity To Present Evidence.

Jason argues that the superior court did not allow him to present evidence, leading the superior court to: (1) incorrectly award Beverly non-marital property; and (2) divide the couple's marital property inequitably. But Jason and Beverly agreed to a property settlement, and Jason never explicitly moved for an evidentiary hearing to interpret that property settlement agreement. His request to address the court so that his expert could answer the court's questions regarding the competing proposed orders was not a request for an evidentiary hearing.

In *Hartley v. Hartley* we explained that "[a]n evidentiary hearing is not necessary if there is no genuine issue of material fact. . . . [Here] there was no genuine factual dispute, only a legal dispute over the proper interpretation of the property settlement agreement."[17] Similarly, in this case the dispute was over the equal distribution of Jason's military pension under the property settlement agreement. Jason and Beverly already had agreed to the court's findings of fact. When issuing its final order the superior court had Jason's objection to Beverly's proposed order and the proposed order Jason's expert prepared.

Because the parties agreed to the facts and the superior court was presented with a purely legal question, the superior court did not erroneously deny Jason's purported request for an evidentiary hearing.

---

[16]     *Young*, 221 P.3d at 1013.

[17]     205 P.3d 342, 350 (Alaska 2009) (citing *Routh v. Andreassen*, 19 P.3d 593, 596 (Alaska 2001)).

## C. The Superior Court Did Not Erroneously Fail To Make Findings To Justify Its Division Of Marital Property.

Jason argues that the superior court failed to analyze mandatory statutory factors applicable to marital property division and failed to articulate findings when dividing the couple's marital property.[18] He explains:

> In this case the court awarded 55% of the non-retirement portion of the marital estate to Beverly and 45% to Jason. The court did not address the unequal division from the property settlement agreement. The court also did not address how by drastically adding value to only Beverly's portion of the agreement it would unbalance the percentages of the division of assets.

In its amended finding of facts and conclusions of law the superior court accepted the "division of property and debts provided in the stipulated property agreement [as] fair and equitable under the circumstances." The parties agreed to the amended findings of fact and conclusions of law.

Jason does not argue that the settlement was invalid. He instead focuses on factors that normally would justify an equal property division. But before their settlement Jason and Beverly both participated in mediation with counsel present, and they freely accepted the agreement.

In its amended findings of fact and conclusions of law the superior court accepted the "division of property and debts provided in the stipulated property agreement [as] fair and equitable under the circumstances." The parties agreed to the amended findings of fact and conclusions of law. "[A] court may accept as just a divorce

---

[18] *See* AS 25.24.160(a)(4)(A)-(I) (listing relevant factors for courts to analyze when dividing marital property).

property settlement entered into by parties represented by counsel."[19]  Because the superior court found that the settlement agreement entered into freely and with counsel was fair and equitable, the decision to accept the settlement agreement without explicit findings on statutory factors was not an abuse of discretion.

> **D.**  **The Superior Court Did Not Err By Crediting Beverly For Jason's Future Pay Increases.**

The superior court's order explained that Jason's and Beverly's shares of the military pension would be determined by designating:

> [T]he number of months of service during the marriage as a numerator (137.462), and the total months of service accomplished by Mr. Jason Glover as the denominator (unknown at this time).  This fraction and equivalent percentage establishes the community share of the total benefit.  The resulting community share is then divided equally between the parties, and multiplied by the benefit payable.

Jason argues that the superior court's order "allowed Beverly to receive the benefits of Jason's future years of service, even though it is separate and non marital property." Jason asserts that "Beverly's marital portion should have been capped to the time in service and pay grade from the agreed upon date of separation."  Although Jason correctly states that the superior court's order allowed Beverly's share of the retirement to increase in value as a result of his promotions and pay raises,[20] the formula the

---

[19]  *Notkin v. Notkin*, 921 P.2d 1109, 1111 (Alaska 1996) (quoting *Kerslake v. Kerslake*, 609 P.2d 559, 560 (Alaska 1980)) (quotation marks omitted).

[20]  *See Tillmon v. Tillmon*, 189 P.3d 1022, 1032 n.35 (Alaska 2008) (explaining that "proposed method of division allows her share of his retirement to increase in value as a result of later promotions and pay raises" when superior court used time rule method).

superior court used was explicitly agreed upon in the parties' property settlement agreement.[21]

The parties agreed to the time rule formula and we have approved the formula. The superior court therefore did not err by allowing Beverly to receive compensation for Jason's future promotions and pay-grade increases.

**E. The Superior Court Did Not Erroneously Divide Gross Pay Or Allocate Over 50% Of Disposable Retired Pay To Beverly.**

The Act authorizes state courts to distribute disposable retired pay,[22] but state courts may not award a single former spouse more than 50% of a service member's disposable retired pay.[23] Jason argues that the superior court erred and violated federal law because it: (1) required him to pay Beverly a sum certain equal to 28.6% from a gross amount of his retirement; and (2) required him to pay Beverly the sum certain amount even if it exceeds the federally mandated cap of 50% of disposable retired pay.

Jason's arguments are unpersuasive. The superior court did not award Beverly a sum certain. Beverly was awarded neither an exact dollar amount nor an exact percentage of Jason's pension. Instead the order made explicit that the exact amount of Beverly's benefit was hypothetical, explaining that "as Mr. Jason Glover's service continues, Ms. Beverly Glover's percentage of the benefits decreases, while the total benefit in which she has an interest increases." The superior court applied the couple's settlement and determined that Beverly was entitled to *50% of the marital portion* of Jason's pension.

---

[21]  The superior court did change the number of months in the fraction's numerator. This was clearly erroneous and is addressed in Section J.

[22]  10 U.S.C. § 1408(c)(1).

[23]  *Id.* § 1408(e)(1).

Jason also incorrectly asserts that Beverly's hypothetical percentage of his retirement pay violates federal law because it equals 57.2% of his disposable retired pay as of October 2012. He argues that if only 50% of his retirement pay is disposable then Beverly will receive 57.2% of his disposable retirement pay.

The superior court's order did not award Beverly a specific percentage of Jason's gross or disposable retirement pay. The order awards Beverly a time rule percentage of Jason's military retirement benefits. Beverly was awarded 50% of the marital portion of Jason's retirement benefits. Thus, even if Jason's entire military pension were marital Beverly could not possibly collect more than 50% of his retirement pay.[24] The order directs that these payments come from Jason's disposable pay "to the extent that is so restricted by law" and directs Jason to indemnify Beverly to ensure that none of his post-divorce actions cause a reduction in her share. The superior court also retained jurisdiction to issue a clarifying order if the original order did not correctly establish Beverly's percentage.

---

[24]    The superior court chose the "[n]umber of months of the marriage during creditable military service (137.462)" as the numerator and chose the "[t]otal number of months of creditable military service for retirement" as the denominator. Because the superior court determined that Jason completed 137.462 months of creditable military service during the marriage, the denominator — Jason's total creditable military service — could not be less than 137.462. If Jason were able to retire after 137.462 months of creditable service, Jason's entire retirement would be considered marital and this number would then be divided in half to determine the spousal benefit. It is not possible that Beverly's spousal benefit could exceed 28.6% of Jason's total retirement pay because Jason is ineligible to receive retirement benefits unless he is employed by the air force for 20 years. 10 U.S.C. § 8911(a). Applying the time rule formula, if Jason worked for 20 years the denominator would be 240 (12 months per year * 20 years) and Beverly would receive 28.6% of Jason's retirement ((137.462/240)/2 = .286).

Because the superior court's order explicitly bars Beverly from receiving more of Jason's disposable pay than allowed by law, the superior court did not incorrectly allocate more than 50% of Jason's disposable retired pay to Beverly.

**F.     The Superior Court Did Not Erroneously Award Jason's Disability Benefits To Beverly.**

Jason argues that the superior court improperly awarded Beverly a portion of his disability benefits.  In *Mansell v. Mansell*, the United States Supreme Court held that the Act "does not grant state courts the power to treat as property divisible upon divorce military retirement pay that has been waived to receive veterans' disability benefits."[25]  In *Clauson v. Clauson* we explained that "[t]he *Mansell* holding clearly prohibits state courts from treating veterans' disability pay as divisible property upon divorce."[26]  But we held that "federal law does not preclude our courts from considering, when equitably allocating property upon divorce, the economic consequences of a decision to waive military retirement pay in order to receive disability pay."[27]

The superior court did not erroneously award Jason's disability benefits to Beverly.  There is no evidence that Jason received disability benefits at the time of the divorce, and Jason does not argue that he ever applied for disability benefits.  The indemnification clause in the superior court's order requires damages if Jason reduces

---

[25]     490 U.S. 581, 594-95 (1989).  *See* 10 U.S.C. § 1408(a)(4)(B) (providing that retired pay waived to receive disability benefits is not considered disposable retired pay).

[26]     831 P.2d 1257, 1259 (Alaska 1992).

[27]     *Id.* at 1264.

Beverly's share of retirement benefits. This clause does exactly what we envisioned in *Young v. Lowery*.[28]

In *Young* we reiterated that "a court may not equitably divide total retired pay; it may equitably divide only the amount of retired pay remaining after the court deducts waived retired pay."[29] However, we also explained that "the trial court may expressly order [a service member] not to reduce his disposable retired pay and require [the service member] to indemnify [the spouse] for any amounts by which her payments are reduced below the amount set on the date the amended qualified order is entered."[30]

Rather than improperly dividing waived benefits, the order awards Beverly her time rule percentage of disposable retirement pay while requiring Jason to indemnify Beverly for any subsequent unilateral actions to decrease the total monthly pension payout amounts. The superior court did not err — the order complies with the Act and our precedent.

G. **The Superior Court Did Not Erroneously Disregard The Stipulated Property Settlement Agreement When It Accepted Beverly's Proposed Military Pension Division That Included Survivor Benefits.**

Jason argues that the superior court erred and ignored the parties' stipulated property settlement agreement when it included survivor benefits in its order incident to divorce because: (1) the parties' mediation mandated the use of federal law; (2) survivor benefits are not required under federal law; (3) Jason's attorney was not authorized to

---

[28]    221 P.3d 1006 (Alaska 2009).

[29]    *Id.* at 1011.

[30]    *Id.* at 1012-13.

change the proposed military retirement order; and (4) the superior court "grossly overcompensated Beverly unconscionably changing the balance of the settlement."[31]

### 1. The mediation did not mandate the use of federal law.

Jason argues that the mediation and settlement agreement directed the use of federal law as opposed to state law when consdering retirement. Jason provides no support for this assertion. The stipulated property settlement agreement mentions federal law and states that "[a] QDRO for Beverly's portion of Jason's military pension, consistent with federal law, will be executed." This brief statement does not support the conclusion that the parties agreed to divide the military pension under federal law as opposed to state law. As discussed above, the Act authorizes state courts to apply state law when dividing military pensions in divorce actions.[32] The Act imposes some limitations on state courts' authority when dividing military pensions, but there is no uniform "federal law" for state courts to apply.

### 2. Federal law does not bar state courts from compelling election of survivor benefits.

Jason correctly asserts that federal law does not require election of survivor benefits, but federal law authorizes state courts to compel survivor benefits election.[33] We have explained that "[b]arring an express understanding to the contrary, an agreement for equitable division of retirement benefits earned during a marriage

---

[31]    Jason also argues that the superior court erred by changing the property agreement and adding numerous financial benefits for Beverly, but he fails to list the purported additional benefits.

[32]    *See* 10 U.S.C. § 1408(a)(2), (c).

[33]    10 U.S.C. § 1448(f)(3); 10 U.S.C. § 1450(f)(3).

presumptively encompasses survivor benefits."[34] The superior court did not err — the order incident to divorce followed this presumption when it included survivor benefits in the military pension division, and there was no express agreement barring survivor benefits.

### 3. Jason's attorney did not change the proposed military QDRO.

Jason argues that the superior court erred when executing the QDRO because Jason's attorney was not authorized to change his proposed order. First, the record does not support Jason's assertion that his attorney was not authorized to make changes to the proposed QDRO. Jason refers to an email that he sent to his attorney, Beverly, and her attorney, but that email did not bar his attorney from changing the QDRO. Second, there is no evidence in the record that Jason's attorney changed the QDRO.

Five days before the superior court issued its final orders, Jason's attorney explained that "[c]ounsel for both Plaintiff and Defendant agree that the court can sign either QDRO that are currently lodged with the Court, however, Mr. Glover would like the opportunity to address the Court . . . and to have his QDRO expert . . . available by phone to answer any of the Court's questions or concerns regarding the dueling QDRO's." Jason's attorney did not change the proposed QDRO; rather, he continued presenting the QDRO to the superior court until it issued final judgment.

### 4. Including survivor benefits did not overcompensate Beverly.

Jason argues that including survivor benefits overcompensated Beverly and changed the balance of the settlement. The settlement awarded Beverly "a percentage of Jason Glover's disposable military retired pay, to be computed by multiplying 50% times a fraction, the numerator of which is 122 months of marriage during . . . Jason

---

[34] *Zito v. Zito*, 969 P.2d 1144, 1148 (Alaska 1998).

Glover's creditable military service, divided by the member's total number of months of creditable military service." We have explained that "[t]he superior court has inherent power, and also the duty, to enforce its decrees."[35] Superior courts may award survivor annuities "to ensure that [a survivor] would receive the full benefit of her property interest should [her former spouse] predecease her."[36] Jason fails to explain how the superior court's decision to protect Beverly's interest in retirement benefits ignored the parties' settlement agreement.

**H.      The Superior Court Did Not Err By Failing To Account For The Unequal Division Of Survivor Benefits Cost.**

Jason argues that the superior court abused its discretion because it did not explain its allocation of survivor benefits cost. The superior court's order explicitly divided survivor benefits cost pro rata. In *Young v. Lowery* we explained that "[a]lthough it may have been permissible to re-allocate that cost some other way, perhaps by requiring Lowery to reimburse Young, the trial court did not abuse its discretion by declining to do so."[37] Jason provides no argument to distinguish our holding in *Young*.

Additionally, when a property settlement agreement's "terms are ambiguous, the superior court 'must attempt to resolve [the ambiguity] by determining the reasonable expectation of the contracting parties.' If the division of marital property is not determined by an agreement between the parties, the superior court has 'wide latitude in fashioning an appropriate property division.' "[38] Once the superior court

---

[35]     *Wahl v. Wahl*, 945 P.2d 1229, 1232 (Alaska 1997).

[36]     *Id.*

[37]     221 P.3d 1006, 1013 (Alaska 2009) (footnotes omitted).

[38]     *Hartley v. Hartley*, 205 P.3d 342, 346 (Alaska 2009) (quoting *Zito*, 969 P.2d at 1147 n.4; *Tillmon v. Tillmon*, 189 P.3d 1022, 1031-32 (Alaska 2008)).

decided to order survivor benefits, the court implicitly determined that a pro rata distribution satisfied Jason's and Beverly's reasonable expectations.

Relying on the federal default and dividing survivor benefits costs pro rata was not an abuse of discretion.

## I. The Superior Court Did Not Err By Not Allowing Jason And Beverly's Children To Be Covered Under The Survivor Benefits.

Jason argues that the survivor benefits award ignored the best interest of the couple's children and that "[t]he court abused its power by dictating the terms of an insurance policy without taking any evidence, abiding by any of the stipulated property settlement, and ignoring the parties['] stated desire, to ensure the economic future of their children." Beverly responds that Jason waived this argument because it was inadequately briefed. Jason's brief cites no legal authority in support of his two-sentence argument that the court should have awarded survivor benefits to the parties' children. This argument is waived because "where a point is given only a cursory statement in the argument portion of a brief, the point will not be considered on appeal."[39]

## J. It Was Error To Change The Calculation Of The Months That The Parties Were Married During Creditable Military Service.

The parties' settlement agreement stated that the coverture fraction numerator for the time rule formula was 122 months of marriage during Jason's military service — the parties stipulated that Beverly was entitled to 50% of Jason's retirement for 122 months of service. The superior court's order incident to divorce used 137.462 as the numerator in its coverture fraction for the time rule formula. Jason argues that he is entitled to at least 74.6% of his retirement "while the court only awarded him 71.4% of his USAF retirement pay."

---

[39] *Adamson v. Univ. of Alaska*, 819 P.2d 886, 889 n.3 (Alaska 1991).

The superior court provided no explanation for changing the numerator in the coverture fraction. Beverly agrees with Jason that 137.462 "is the wrong numerator. The parties agreed to 122 months as the numerator." Beverly requests that we "remand the matter to the trial court for the correction to the numerator [to] be made."

We reverse and remand the superior court's decision to use 137.462 months as the numerator in the coverture fraction because the superior court clearly erred when changing the agreed-upon length of marriage without explanation.

**K.    It Was Error To Require Jason To Pay For Excess Survivor Benefits Coverage.**

Jason argues that the superior court erred by requiring "Jason to pay for 100% [survivor benefits] coverage while he is alive even though Beverly, if entitled to any [survivor benefits], should only get the amount of retirement upon his death she was getting while he was alive." The superior court ordered that Jason purchase a 55% survivor benefit.[40] As explained above, the maximum percent of Jason's disposable retired pay Beverly could receive under the superior court's order is 28.6%.[41] Thus, Jason is correct that under the superior court's order Beverly could receive 55% of his retired pay as a survivor benefit upon his death, while she would receive no more than 28.6% of his retired pay while he is living.

We have never decided whether it is an abuse of discretion for a trial court to award survivor benefits exceeding what a former spouse was entitled to under a property settlement agreement. In *Young v. Lowery*, Lowery was awarded 25.34% of

---

[40]    Survivor benefits coverage cannot exceed 55% of total monthly retired pay. 10 U.S.C. § 1451(a)(1)(A).

[41]    If Jason retired after reaching the minimum 240 months necessary for his retirement eligibility, Beverly would receive 28.6%. *Supra* note 24.

Young's disposable retired pay.[42]  The superior court also ordered Young to purchase a 55% survivor benefit.[43]  Thus, Lowery received a potential survivor benefit that was almost double her retired pay award. We affirmed the survivor benefits, but the specific issue in that case was the allocation of the cost and not the excess benefits.[44]

Compelling a survivor annuity award is fair because "[s]uch an award [is] appropriate to ensure that [the survivor] would receive the full benefit of her property interest should [her spouse] predecease her."[45]  It is equitable to "award the nonowning spouse survivor benefits equal to the amount of retirement benefits which the nonowning spouse was receiving before the employee spouse's death."[46]

Here the superior court did not explain how awarding a 55% survivor benefit would impact the parties' settlement agreement.  We therefore remand to the superior court for further consideration of an award guaranteeing Beverly benefits after Jason's death equal to the retirement benefits she receives while he lives.

## V.    CONCLUSION

We REMAND to the superior court for further proceedings on the survivor benefits percentage and to correct the length of marriage determination for the QDRO. We AFFIRM in all other respects.

---

[42]    221 P.3d at 1010.

[43]    *Id.* at 1009.

[44]    *Id.* at 1013.

[45]    *Wahl v. Wahl*, 945 P.2d 1229, 1232 (Alaska 1997).

[46]    2 BRETT R. TURNER, EQUITABLE DISTRIBUTION OF PROPERTY § 6:45, 281 (3d ed. 2005).