*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| SHIRLEY HAGEN, Wife and Personal Representative for the Estate of GREGORY HAGEN, | ) ) ) | Supreme Court No. S-15479 |
| | ) | Superior Court No. 3AN-11-12832 CI |
| Appellant, | ) | |
| | ) | O P I N I O N |
| v. | ) | |
| | ) | No. 7018 – July 10, 2015 |
| GUNNAR STROBEL, M.D. and ALAN E. SKOLNICK, M.D., | ) ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Patrick J. McKay, Judge.

Appearances: James Alan Wendt, Law Offices of James Alan Wendt, Anchorage, for Appellant. Timothy J. Lamb, Donna M. Meyers, and Whitney L. Traeger, Delaney Wiles, Inc., Anchorage, for Appellees.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

BOLGER, Justice.

## I.     INTRODUCTION

A cardiologist performed pacemaker surgery on Gregory Hagen and then ordered an x-ray to examine the placement of the pacemaker leads and check for

complications. A second cardiologist reviewed the x-ray and discharged Gregory from the hospital. A radiologist also reviewed the x-ray, noted a potential "nodule" in Gregory's lung, and recommended follow-up x-rays. But these recommendations were never relayed to Gregory, who died from lung cancer approximately two years later.

Gregory's wife, Shirley Hagen,[1] filed a medical negligence suit against the two cardiologists, alleging that their failure to relay the radiologist's recommendations resulted in a lost chance of survival for Gregory. The superior court granted summary judgment to the cardiologists on the grounds that expert testimony from a board-certified cardiologist was required to establish the standard of care and that the Estate had failed to identify such an expert. In this appeal, the Estate argues that there is a genuine issue of material fact whether the cardiologist who ordered the x-ray later received the radiologist's report. But the Estate does not show how this issue is material to the superior court's decision regarding the necessity of expert testimony to establish the standard of care. We therefore affirm.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

In November 2007 Dr. Gunnar Strobel, a board-certified[2] cardiologist with the Alaska Heart Institute in Anchorage, implanted a pacemaker in Gregory Hagen at Mat-Su Regional Medical Center in Palmer. The following day Dr. Strobel ordered an x-ray to examine the "positioning of the pacemaker leads" and check for "implantation

---

[1]    Hereinafter, we refer to Shirley Hagen in her capacities as Gregory Hagen's wife and personal representative for Gregory's estate as "the Estate." We refer to Gregory and Shirley Hagen individually by their first names where context requires.

[2]    Hereinafter, we use "board-certified" as synonymous with meeting the requirement of AS 09.20.185(a)(3): "certified by a board recognized by the state as having acknowledged expertise and training directly related to the particular field or matter at issue."

complications." He then returned to Anchorage. Dr. Alan Skolnick, another board-certified cardiologist, reviewed the x-ray for complications and dictated a discharge report. Gregory was then discharged from the hospital.

A radiologist also reviewed the x-ray and dictated a report (the Radiologist Report). In addition to noting the placement of the pacemaker leads, the Radiologist Report observed:

> A 1 cm density projects in the right upper lobe. It is seen in the second anterior interspace near the intersection with the fourth posterior rib space. The possibility of the nodule is raised. When the patient's condition permits, PA, shallow obliques, lateral[,] and apical lordotic views are suggested for further evaluation.

And under the heading "Impression," the Radiologist Report noted: "Equivocal for right upper lobe nodule. Recommend followup with PA, lateral, obliques[,] and apical lordotic when the patient's condition stabilizes."

In March 2008 Gregory saw Dr. Strobel for a follow-up appointment. According to Dr. Strobel, the purpose of the visit was to "check the pacemaker, discuss the chest pain [Gregory] had experienced in December 2007, and [discuss] the results of [the] December nuclear stress test [that followed]." The parties agree that Gregory never received any information about the contents of the Radiologist Report or the recommendation for further x-rays.

Over one year later, Gregory was diagnosed with "poorly differentiated non-small cell carcinoma," a form of lung cancer. This cancer resulted in Gregory's death in December 2009.

**B.      Proceedings**

In December 2011 the Estate filed a wrongful death and survival action against Dr. Strobel and Dr. Skolnick (collectively, the cardiologists).[3]  In its complaint the Estate alleged that the Radiologist Report "included reference to a nodule that would have been diagnosed as early stage lung cancer had further studies been administered." The Estate claimed that the cardiologists failed to meet prevailing standards of medical care, resulting in a lost chance of survival for Gregory.

The superior court entered a pretrial order requiring the parties to identify retained expert witnesses by September 2, 2013.  In an email to opposing counsel, the Estate's attorney identified an oncologist whom the Estate planned to call as an expert, but the Estate never filed a list of retained expert witnesses.  On October 4 the cardiologists filed an unopposed motion to preclude the Estate from calling any experts other than the oncologist.  The court granted this motion.

The cardiologists then filed a motion for summary judgment, supported primarily by an affidavit from Dr. Strobel.  Dr. Strobel attested that in his expert opinion, the cardiologists "met the appropriate standard of care" throughout Gregory's treatment. Dr. Strobel further opined that he "did not have a duty to go back through the entire chart, and check all other care providers['] medical records" when Gregory returned for his follow-up visit.

In their memorandum in support of summary judgment, the cardiologists pointed to our statement in *Trombley v. Starr-Wood Cardiac Group, PC* that "[i]n medical malpractice actions . . . the jury ordinarily may find a breach of professional duty

---

[3]      The Estate also named the radiologist who reviewed Gregory's x-rays and a family physician who had referred Gregory to Dr. Strobel.  But both doctors were subsequently dismissed from the suit.

only on the basis of expert testimony."[4] The cardiologists also highlighted AS 09.20.185(a), which provides that in a professional negligence case, an expert testifying on the "appropriate standard of care" must be board-certified and "trained and experienced in the same discipline or school of practice as the defendant or in an area directly related to a matter at issue." Accordingly, the cardiologists argued that the Estate was required to identify "a board certified cardiologist who would testify that [the cardiologists'] medical care and treatment fell below the standard of care."

The Estate had identified no such expert and was precluded from doing so by the superior court's prior order. And the Estate did not oppose the cardiologists' motion for summary judgment or submit additional evidence. The superior court, concluding that the Estate was required to identify a board-certified cardiologist to rebut Dr. Strobel's sworn affidavit, granted summary judgment and dismissed the suit against the cardiologists with prejudice.

The Estate moved for reconsideration, contending that the court had "overlooked a material fact or misconceived a material question." Specifically, the Estate argued that the cardiologists' factual account was internally inconsistent: the cardiologists initially admitted in their answer that the Radiologist Report was provided to Dr. Strobel, but Dr. Strobel later claimed in his deposition testimony that he never received it. The Estate also filed a motion to amend the complaint, pointing to Dr. Strobel's statement in his deposition that he did not read the Radiologist Report because an Alaska Heart Institute employee failed to place a copy in his inbox. The Estate argued that because the cardiologists failed to identify "all potentially responsible persons" as

_____

[4]     3 P.3d 916, 919 (Alaska 2000) (second alteration in original) (quoting *Kendall v. State, Div. of Corr.*, 692 P.2d 953, 955 (Alaska 1984)) (internal quotation marks omitted).

required under Alaska Civil Rule 26(a)(1)(H),[5] it should be granted leave to amend its complaint to add allegations against Alaska Heart Institute.

The superior court denied the Estate's motion for reconsideration and entered final judgment in the cardiologists' favor. The court did not rule on the Estate's motion to amend.

## III.    STANDARD OF REVIEW

"We review a grant of summary judgment de novo, affirming if the record presents no genuine issue of material fact and if the movant is entitled to judgment as a matter of law."[6] "We must determine whether any genuine issue of material fact exists, and in so doing all factual inferences must be drawn in favor of — and the facts must be viewed in the light most favorable to — the party against whom summary judgment was granted."[7]

"[A] party seeking summary judgment has the initial burden of proving, through admissible evidence, that there are no [genuine] disputed issues of material fact

_____

[5]    In relevant part, Rule 26(a)(1)(H) requires,

> Except to the extent otherwise directed by order or rule, a party shall, without awaiting a discovery request, provide to other parties . . . the identity, with as much specificity as may be known at the time, of all potentially responsible persons . . . , and whether the party will choose to seek to allocate fault against each identified potentially responsible person.

[6]    *Kelly v. Municipality of Anchorage*, 270 P.3d 801, 803 (Alaska 2012) (quoting *Beegan v. State, Dep't of Transp. & Pub. Facilities*, 195 P.3d 134, 138 (Alaska 2008)) (internal quotation marks omitted).

[7]    *Id.* (footnote omitted) (quoting *Nielson v. Benton*, 903 P.2d 1049, 1051-52 (Alaska 1995)) (citing *Rockstad v. Erikson*, 113 P.3d 1215, 1219 (Alaska 2005)) (internal quotation marks omitted).

and that the moving party is entitled to judgment as a matter of law."[8] "Once the moving party has made that showing, the burden shifts to the non-moving party to set forth specific facts showing that he could produce evidence reasonably tending to dispute or contradict the movant's evidence and thus demonstrate that a material issue of fact exists."[9]

## IV. DISCUSSION

### A. The Superior Court Did Not Err In Granting The Cardiologists' Motion For Summary Judgment.

"In an action for medical negligence, the plaintiff has the burden of establishing the degree of care ordinarily exercised under the circumstances by health care providers in the defendant's field or speciality . . . ."[10] And in such actions, "the jury ordinarily may find a breach of professional duty only on the basis of expert testimony."[11]

The cardiologists argued in their motion for summary judgment that the Estate would need to present expert testimony from a board-certified cardiologist to

---

[8]     *Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 517 (Alaska 2014) (alterations in original) (quoting *Mitchell v. Teck Cominco Alaska Inc.*, 193 P.3d 751, 760 n.25 (Alaska 2008)) (internal quotation marks omitted).

[9]     *Id.* (quoting *State, Dep't of Highways v. Green*, 586 P.2d 595, 606 n.32 (Alaska 1978)) (internal quotation marks omitted).

[10]     *Achman v. State*, 323 P.3d 1123, 1129 (Alaska 2014) (citing AS 09.55.540(a)).

[11]     *Trombley v. Starr-Wood Cardiac Grp., PC*, 3 P.3d 916, 919 (Alaska 2000) (quoting *Kendall v. State, Div. of Corr.*, 692 P.2d 953, 955 (Alaska 1984)) (internal quotation marks omitted).

establish "that a breach of duty owed occurred."[12] The superior court agreed, concluding that

> the medical issues in this litigation concerning the duties owed by cardiologist[s] Dr. Strobel and Dr. Skolnick relative to the care they provided to [Gregory] are beyond the comprehension of lay jurors, and therefore they require expert medical testimony from a board certified physician or physicians in the area or areas of specialty at issue in this case, which is cardiology.

As the superior court noted, the cardiologists submitted an affidavit from a board-certified cardiologist, Dr. Strobel, while the Estate failed to similarly offer sworn expert testimony as necessary to meet its burden of production. The court concluded that summary judgment was therefore appropriate.

We must first determine whether the cardiologists met their burden, as the moving parties, of showing that there was no genuine issue of material fact. With respect to Dr. Skolnick, Dr. Strobel attested that in his opinion,

> Dr. Skolnick did not need to wait until after the radiologist's typed report was available before authorizing the discharge of [Gregory] from the hospital. The purpose of Dr. Skolnick's viewing the x-ray was to check that the leads in

---

[12] Under AS 09.20.185(a) an expert witness testifying "[i]n an action based on professional negligence" must be:

> (1) a professional who is licensed in this state or in another state or country;

> (2) trained and experienced in the same discipline or school of practice as the defendant or in an area directly related to a matter at issue; and

> (3) certified by a board recognized by the state as having acknowledged expertise and training directly related to the particular field or matter at issue.

the wall of the heart had not become displaced, that [Gregory] did not have a pneumothorax, etc. It was not to do a thorough radiological evaluation of [Gregory's] overall health.

Dr. Strobel further opined that Dr. Skolnick "met the appropriate standard of care as described in AS 09.55.540 . . . required of cardiologists in Alaska."

As to his own actions, Dr. Strobel defined the appropriate standard of care by stating in his affidavit:

It is . . . my expert opinion that when [Gregory] returned approximately [four and one-half] months after implantation of a pacemaker . . . for a pacemaker check . . . , I did not have a duty to go back through the entire chart, and check all other care providers['] medical records, etc. The chest x-ray review by Dr. Skolnick in November had already confirmed the pacemaker implantation did not have complications. The purpose of that visit was to check the pacemaker, discuss the chest pain he had experienced in December 2007, and the results of that December nuclear stress test . . . .

Dr. Strobel concluded that, like Dr. Skolnick, he "met the appropriate standard of care."

In light of these statements — which were not challenged by conflicting expert testimony — we conclude that the cardiologists met their burden as the moving parties by showing that there was no genuine issue of material fact as to the standard of care. Thus to avoid summary judgment, the Estate was required to demonstrate a genuine issue of material fact as to the appropriate standard of care — an element on which the Estate bore the burden of proof.[13] But the Estate did not file an opposition brief or submit additional evidence. The superior court's grant of summary judgment was therefore appropriate.

---

[13]     *See Achman*, 323 P.3d at 1129 (citing AS 09.55.540(a)).

On appeal the Estate argues, as it did in its motion for reconsideration, that the cardiologists' narrative was inconsistent, and that this inconsistency created an issue of material fact. The Estate notes the cardiologists' admission in their answer that — "[u]pon information and belief" — "[a] copy of the x-ray report containing [the radiologist's] recommendation was provided to [Dr.] Strobel." The Estate contrasts this admission with Dr. Strobel's subsequent deposition testimony that, although the Radiologist Report "was scanned in at the Alaska Heart [Institute] [o]ffice," he never received a copy in his office "inbox."

We see no inconsistency in these statements. Critically, Dr. Strobel never denied that he was "provided" the Radiologist Report; he merely testified that he never received a copy in his office inbox. And in the cardiologists' motion for summary judgment, they *admitted* that "[a] copy of the radiology report was *sent* to Dr. Strobel at [Alaska Heart Institute]." (Emphasis added.) Even "reading the record in the light most favorable to the non-moving party and making all reasonable inferences in its favor,"[14] the fact that a copy of the Radiology Report was "sent" to Dr. Strobel and "scanned in" to the Alaska Heart Institute's electronic record-keeping system does not suggest that Dr. Strobel actually *received it in his inbox*. And the Estate points to nothing else in the record giving rise to a genuine issue of fact.

Moreover, "the existence of a disputed factual issue will only preclude summary judgment if it is a *material* issue,"[15] and "[a] factual issue will not be considered material if, even assuming the factual situation to be as the non-moving party contends, he or she would still not have a factual basis for a claim for relief against the

---

[14] *Bachner Co. v. Weed*, 315 P.3d 1184, 1188 (Alaska 2013) (quoting *Witt v. State, Dep't of Corr.*, 75 P.3d 1030, 1033 (Alaska 2003)) (internal quotation marks omitted).

[15] *Sonneman v. State*, 969 P.2d 632, 635 (Alaska 1998) (emphasis in original).

moving party."[16] Here the superior court granted summary judgment on the ground that expert testimony from a board-certified cardiologist was required to establish the standard of care, and the Estate put forth no such expert. On appeal, the Estate does not explain how Dr. Strobel's receipt of the Radiologist Report would have impacted this determinative issue.[17] And the Estate points to nothing else in the record creating a material issue of fact as to the appropriate standard of care.

### B. The Estate Waived Its Argument That The Superior Court Erred In Denying Its Motion For Reconsideration.

The Estate appears to argue that the superior court should have granted its motion for reconsideration, asserting that the court erred by concluding that there was no "evidence [relevant] to the summary judgment motion that the court should pause to reconsider." But the Estate gives only cursory treatment to this issue in the argument section of its opening brief and omitted the issue from the brief's statement of points on appeal.

"[W]here a point is given only a cursory statement in the argument portion of a brief, the point will not be considered on appeal."[18] We conclude that the Estate's argument regarding its motion for reconsideration was waived for inadequate briefing.

---

[16] *Id.*; *see also Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 519 (Alaska 2014) ("[A] material fact is one upon which resolution of an issue turns.").

[17] The Estate does argue that "[t]here clearly existed an issue [as to] whether [Dr.] Strobel had indeed been provided a copy of the report. There is no issue that the failure to follow-up on such a report is improper as [Dr. Strobel] admitted as much in his deposition." But Dr. Strobel did not admit that it would be "improper" not to examine a report he had received; he merely stated that he would "normally" read these types of reports.

[18] *See Glover v. Ranney*, 314 P.3d 535, 545 (Alaska 2013) (internal quotation marks omitted).

C.   **The Estate Waived Its Argument That The Superior Court Should Have Granted Its Motion to Amend The Complaint.**

The Estate argues that the superior court should have granted its motion to amend its complaint. In requesting leave to amend, the Estate pointed to Dr. Strobel's deposition testimony that an Alaska Heart Institute employee failed to place a copy of the Radiologist Report in his "inbox" and argued that the cardiologists failed to identify all "potentially responsible persons" as required under Civil Rule 26(a)(1)(H). Accordingly, the Estate asked to amend its complaint to add the Alaska Heart Institute as a defendant; to add new allegations concerning the Alaska Heart Institute's alleged failure to deliver a copy of the Radiologist Report to Dr. Strobel; and to add a negligence cause of action against the Alaska Heart Institute. Although the superior court denied the Estate's motion for reconsideration, it never ruled on its motion to amend.

The Estate omitted this issue from its statement of issues presented for review and discusses it only briefly in the argument portion of its brief, asserting that the cardiologists violated Rule 26(a)(1)(H) and that this "prejudiced [the] [p]laintiffs." But the Estate cites no legal authority for the implied proposition that the superior court was required to grant leave to amend even after granting summary judgment and dismissing the cardiologists from the suit.[19] Nor does the Estate cite Alaska Civil Rule 15 or any other legal authority regarding a superior court's discretion in considering a motion for leave to amend a complaint.[20] As we note above, we will not consider an issue "given

---

[19]   *Cf. Bush v. Elkins*, 342 P.3d 1245, 1250-52 (Alaska 2015) (analyzing a superior court's denial of a motion for leave to amend after the plaintiff had been dismissed from the case).

[20]   *See, e.g.*, *Miller v. Safeway, Inc.*, 102 P.3d 282, 294 (Alaska 2004) (recognizing several reasons to deny leave to amend a complaint).

-12-                                                                    7018

only a cursory statement in the argument portion of a brief."[21]  We thus conclude that the Estate has waived this argument through inadequate briefing on appeal.

## V. CONCLUSION

We therefore AFFIRM the superior court's judgment.

---

[21]  *See Glover*, 314 P.3d at 545.